UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN R. LUCKER, ELIZABETH A. LUCKER,
NANCY L. ROUSSEAU, Individually and On
Behalf of All Others Similarly Situated,

    Plaintiffs,

 -against-             **MEMORANDUM & ORDER**
                   07 CV 3823 (RJD) (JMA)

BAYSIDE CEMETERY and
CONGREGATION SHAARE ZEDEK,

    Defendants.
------------------------------------------------------------x
LYNN COHEN, Individually and On Behalf
Of All Others Similarly Situated,

    Plaintiff,

 -against-             08 CV 3555 (RJD) (JMA)

BAYSIDE CEMETERY and
CONGREGATION SHAARE ZEDEK,

    Defendants.
------------------------------------------------------------x
FRAN GOLDSTEIN, Individually and On
Behalf Of All Others Similarly Situated,

    Plaintiff,

 -against-             08 CV 3923 (RJD) (JMA)

BAYSIDE CEMETERY and
CONGREGATION SHAARE ZEDEK,

    Defendants.
------------------------------------------------------------x

DEARIE, Chief Judge.

  Plaintiffs bring this series of three virtually identical class actions against defendants Bayside Cemetery and Congregation Shaare Zedek on behalf of those who purchased, or are relatives of those who purchased, perpetual care contracts from defendants from 1970 onward.

Plaintiffs allege eight separate causes of action under New York law stemming from their claim that defendants have failed to maintain their relatives' burial plots.

Defendants move to dismiss all three actions. On December 10, 2008, the Court issued an order alerting the parties to the Court's concerns about its jurisdiction under the Class Action Fairness Act, and requested additional briefing on this threshold jurisdictional concern. In its order of January 12, 2009, the Court informed the parties that despite, and in light of the parties' additional briefing, the jurisdictional issue was not ripe for resolution. The Court authorized limited jurisdictional discovery under the direction of Magistrate Judge Azrack.

For the reasons discussed below, the Court declines to exercise jurisdiction under CAFA and dismisses all three actions.

## BACKGROUND

Plaintiffs and siblings John Lucker, Elizabeth Lucker, and Nancy Rousseau filed the first of these three class actions. Plaintiffs allege that their grandparents purchased perpetual care contracts in the 1970s from defendants, through the Chebra Shebath Achim Society. In short, they allege that defendants have "refused to honor perpetual care or annual care contracts which were entered into in accordance with New York and Jewish law." Lucker Compl. ¶ 2. John Lucker is a Connecticut resident, while Elizabeth Lucker and Nancy L. Rousseau live in Arkansas. Two virtually identical class actions were subsequently filed by Lynn Cohen and Fran Goldstein. Cohen lives in the Bronx, while Goldstein alleges only that she resides somewhere in New York State.

According to the complaints, Bayside Cemetery was founded in the nineteenth century and contains the graves of over 35,000 Jews. Id. ¶ 3. Plaintiffs allege that Congregation Shaare

Zedek, itself founded in the mid-nineteenth century, bought the land at Bayside Cemetery, retaining five percent for its own congregants and selling the rest to individuals and burial societies. Id. ¶ 4. Plaintiffs further allege that defendants sold so-called perpetual or annual care contracts for plots at the cemetery, which guaranteed, "in exchange for compensation, all general work necessary to keep one or more plots at a cemetery property in a presentable condition at all relevant times." Id. ¶ 5. According to plaintiffs, defendants received hundreds of thousands of dollars for these contracts. Id. ¶ 7.

Plaintiffs argue that Congregation Shaare Zedek has denied ownership of Bayside Cemetery in an attempt to its legal obligations to provide perpetual care. Id. ¶ 8. Furthermore, plaintiffs claim that defendants have destroyed documents identifying the plots in question. Plaintiffs also contend that defendants used funds earmarked for perpetual care in order to make structural repairs and improvements to their synagogue in Manhattan. Id. ¶ 11.

Finally, plaintiffs allege that defendants "have falsely advertised perpetual and annual care contracts, engaged in deceptive conduct, violated their fiduciary duties, engaged in conversion and breached their perpetual and annual care contracts with Plaintiffs and hundreds or likely thousands of class members." Id. ¶ 16. They continue: "Defendants' deliberate false statements and fraudulent conduct has resulted in the desecration of thousands of plots at the cemetery in violation of New York and Jewish law." Id.

Plaintiffs bring this action on "their own behalf" and as a class action on behalf of "[a]ll persons, or relatives of persons, who purchased a perpetual care or annual care contract from a Defendant or their agents or assigns from January 1, 1970 to present." Id. ¶ 24. Plaintiffs allege eight causes of action under New York law, including false advertising pursuant to N.Y. Gen.

Bus. Law § 350; deceptive acts or practices pursuant to N.Y. Gen. Bus. Law § 349; deceptive acts or practices against those older than 65 pursuant to N.Y. Gen. Bus. Law § 349-c; breach of contract; unjust enrichment; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; and conversion. Id. ¶¶ 32-71. Plaintiffs seek damages and injunctive relief.

## DISCUSSION

### I.  The Class Action Fairness Act

Plaintiffs assert the Class Action Fairness Act ("CAFA") as the basis for the Court's jurisdiction in these actions. Enacted in 2005, one of CAFA's primary purposes was to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub. L. 109-2, § 2, 119 Stat. 4, 5 (2005).

CAFA authorizes a federal court to entertain a class action with 100 or more class members, minimal diversity, and an amount in controversy of at least $5 million. 28 U.S.C. § 1332 (d)(2). In making a determination of its subject matter jurisdiction over a matter brought pursuant to CAFA, the Court must first "assess the three prerequisites for CAFA jurisdiction." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006).

However, "the diversity jurisdiction authorized in these new provisions is not absolute," and there are two important exceptions written into the statute. Wright & Miller, Federal Practice and Procedure § 1756.2 (2009). The circumstances under which a district court *must* decline jurisdiction under CAFA – the so-called "mandatory exception" – are outlined in § 1332(d)(4). Wright & Miller summarizes that analysis as follows:

> [T]he court must decline jurisdiction over a class action when greater than two-thirds of the plaintiff class members are citizens of

4

> the state where the action was originally filed, when at least one
> defendant from whom significant relief is sought and whose
> conduct forms a significant basis for the class claims is a citizen of
> the filing state and the principal injuries or any related conduct of
> each defendant occurred in the original filing state, and when no
> other similar class action against any of the defendants has been
> filed during the 3-year period prior to the instant class action.

Id.

The "discretionary exception" is described in § 1332 (d)(3), which states that a "district court may, in the interests of justice, and looking at the totality of the circumstances, decline to exercise jurisdiction under [CAFA] in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332 (d)(3).

## II.     Subject Matter Jurisdiction

"It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." Blockbuster, Inc., 472 F.3d at 57 (internal citation omitted). Defendants are New York residents, and the named plaintiffs in the Cohen and Goldstein actions are also New Yorkers. Accordingly, those two lawsuits fail to establish even the minimal diversity required to proceed under CAFA, and are dismissed for lack of subject matter jurisdiction.

The three named Lucker plaintiffs, on the other hand, allege that they are residents of Arkansas and Connecticut, therefore establishing the requisite minimal diversity. Moreover, they have alleged that there are more than 100 members in the proposed class, and an amount in controversy of at least $5 million. The Lucker plaintiffs have thus met their initial jurisdictional burden under CAFA. Ordinarily, "the party seeking to avail itself of an exception to CAFA

5

jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies." Mattera v. Clear Channel Communs., Inc., 239 F.R.D. 70, 79 (S.D.N.Y. 2006). However – perhaps themselves preferring to remain in federal court – defendants have conceded that plaintiffs have met their burden, and have not sought to invoke any of CAFA's exceptions.

The Court, however, has a "continuing obligation . . . to ensure its own subject-matter jurisdiction," and therefore must "undertake[] the analysis *sua sponte*." Arrow Fin. Servs., LLC v. Massil, 2009 WL 348553, at *1 (E.D.N.Y. Feb. 11, 2009). Because "the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants. . . . [they] cannot waive subject matter jurisdiction by express consent [or] conduct." United Food & Commercial Workers Union v. Centermark Properties Meriden Square, Inc., 30 F.3d 298, 303 (2d Cir. 1994) (internal citations omitted).

### A. Citizenship of Proposed Class Members

On December 11, 2008, the Court issued an order alerting the parties to its jurisdictional concerns. Specifically, the Court asked the parties for additional briefing on the CAFA exceptions and 28 U.S.C. § 1332(c), which governs citizenship determinations of the "legal representative" of an estate of a decedent in diversity cases. Section 1332(c)(2) states, in pertinent part, that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). The applicability of this provision is significant here, as the exceptions to CAFA turn on the number of class members who are deemed New York citizens for diversity purposes.

The critical question in this litigation is: On whose behalf do plaintiffs seek relief? Plaintiffs have presented a tortured, often conflicting answer to that question. In the complaint

itself, plaintiffs state simply that they "bring this action on their own behalf" as "persons, or relatives of persons, who purchased a perpetual care contract from a Defendant or their agents or assigns from January 1, 1970 to present." Lucker Compl. ¶ 24. In their opposition to defendant's motion to dismiss, however, plaintiffs claim that they have "made clear that they are descendants of individuals who purchased perpetual or annual care, 'stand in the shoes' of their relatives and sue in their personal capacity as legal representatives/family members." Pls.' Opp. Br. at 9-10. Plaintiffs further explain that "each Plaintiff is the executor or legal representative of the family member who purchased perpetual care or for whom it was purchased." Id. at 10.

Apparently in an attempt to establish standing, plaintiffs have conceded that they are suing in a representative capacity. Because plaintiffs have stated that they "stand in the shoes" of their deceased relatives, therefore, the Court must apply the citizenship of those who actually entered into perpetual care contracts for purposes of determining diversity and the applicability of CAFA's exceptions.

No doubt conscious of the tension and tricky interplay of considerations of standing and jurisdiction, plaintiffs try a different tactic in their supplemental brief. Their goal, understandably, is to establish standing without triggering § 1332(c)(2) and thereby undermining their argument that the CAFA jurisdictional exceptions do not apply. Their brief recites: "Plaintiffs in this case *have not* sued as the 'Executrix' of a deceased family member. Instead, they have sued in their name as a legal representative/family member or near relative." Pls.' Supp. Br. at 8 (emphasis in original). Plaintiffs' attempt to make a distinction between "executor" and "legal representative" is unavailing, especially when the statute itself states that "*the legal representative* of the estate of a decedent shall be deemed to be a citizen only of the

same State as the decedent." 28 U.S.C. § 1332(c)(2) (emphasis added). Plaintiffs cannot, on the one hand, claim that they are bringing this action as the "legal representative/family member," and then, in the next breath, declare that they are not suing as the "legal representative of the estate."

The determination of this Court's jurisdiction cannot be held hostage to clever or duplicitous pleading. The Court's authority to act is not a matter of maybe. And, strategically inspired or not, the defense demurrer regarding jurisdiction does not relieve the plaintiffs from their obligation to establish the Court's jurisdiction, particularly when on its face these suits essentially seek to vindicate the rights of the deceased under local law.

### B.  CAFA Exceptions

Plaintiffs argue that neither the mandatory nor discretionary exceptions to CAFA apply. They claim that the affidavit of Bob Roberts, a purported expert in "cemetery operations," suggests, without elaboration, that "more than half of the class members in this case are likely from *outside* the State of New York." Pls.' Supp. Br. at 6 (emphasis in original). Furthermore, plaintiffs argue, "some" of the documents produced during jurisdictional discovery would suggest that there are "class members/relatives" from many states. Pls.' February 27, 2009 letter to the Court.

Construing plaintiffs' jurisdictional claims liberally, as it must, the Court declines to invoke the mandatory CAFA exception. While the Court finds it difficult to believe that at least two-thirds of those who signed contracts to be buried in Queens do not, or did not, live in New York, it gives plaintiffs the benefit of the doubt.

The discretionary exception, however, applies here. Following the Court-ordered

jurisdictional discovery, plaintiffs still failed to provide any credible evidence to overcome the eminently reasonable assumption that the majority -- and certainly one-third -- of those buried, or desiring to be buried, in a Queens cemetery are New York residents. Even plaintiffs' own cemetery expert does not assert that fewer than one-third of those who signed Bayside contracts were residents of New York.

Thus, having determined that at least one-third of plaintiffs' class members reside in New York, the Court proceeds to an analysis of the discretionary factors set forth in § 1332(d)(3):

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of the class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332 (d)(3).

Plaintiffs argue that the "interests of justice" factors are inapplicable here, and that their claims "unquestionably involve an interstate issue." Pls.' Supp. Br. at 7. Plaintiffs urge that "logic dictates and the Roberts declaration suggest that the number of New York class members *is not* substantially larger than the number of citizens from any other states," and that the class members "consist of family members and near relatives who reside across the country." Id. at 7-

8 (emphasis in original).[1]

Plaintiffs' unsubstantiated arguments are unavailing. This is a case with New York defendants who entered into New York contracts involving those wishing to be buried in New York. Furthermore, all of plaintiffs' allegations have been brought pursuant to New York law. This is not the type of class action with national implications contemplated by CAFA, and is precisely the kind of local lawsuit over which Congress explicitly instructed district courts to decline jurisdiction.

While it is unusual for a court to examine the CAFA exceptions in a case originally filed in federal court, as opposed to removed cases, it is not without precedent. For example, in Mattera v. Clear Channel Communications, Inc., 239 F.R.D. 70 (S.D.N.Y. 2006), Judge Chin declined jurisdiction on the basis of the CAFA discretionary exception. In that case, employees of New York radio stations alleging violations of improper wage deduction under New York law originally brought their claim in the Southern District of New York. While Judge Chin found that the plaintiffs had satisfied their threshold burden, he nonetheless held that the discretionary exception to CAFA applied:

> Even assuming that New York citizens do not comprise more than two-thirds of the putative class, the Court has discretion to decline jurisdiction over this case in the interests of justice. . . . It is difficult to conceive how the citizenship requirement under this exception, that more than one-third but less than two-thirds of the putative class members be New York citizens, would not be met here, given that all of the putative class members work in New York. Upon consideration of the totality of the circumstances and

---

[1] As the Court has already noted above, the residencies of "family members and near relatives" is irrelevant here, as plaintiffs have noted that they "stand in the shoes" of their deceased relatives. Accordingly, it is the residency of the individuals who actually signed the contracts with defendants that controls.

> the factors delineated in § 1332(d)(3), I am persuaded that the exercise of CAFA jurisdiction over this case is inappropriate. Mattera's claim is governed by New York law; she purports to bring her claim on behalf of persons working in New York, challenging a charge back policy in effect in New York that is in contravention of New York law.

Mattera, 239 F.R.D. at 80-81 (internal citations omitted).

Similarly, the Lucker plaintiffs have solely alleged New York causes of action against New York defendants. Although relatives of those interred at Bayside may live outside of the state, it is beyond serious question that many of those who actually signed contracts to be buried in Queens are – or were – New Yorkers. This is not the type of interstate controversy with national implications contemplated by the Congress when it enacted CAFA. Accordingly, the Court invokes the discretionary exception to CAFA pursuant to 28 U.S.C. § 1332(d)(3), and declines to exercise subject matter jurisdiction over the Lucker matter.

As the Court has noted from the outset of these proceedings, all agree that Bayside Cemetery's state of decay and disrepair is disheartening and in need of a prompt repair. As unfortunate as this lingering dispute is, and fully appreciating the frustration and anger of the affected families, the Court must conclude that it is without jurisdiction to act.

## CONCLUSION

For the reasons stated above, the motions to dismiss are granted.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2009

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge